May it please the court, I'm Robert John for the appellant Robert Lozano, Sr. The area of law regarding the delivery of packages and the interception and investigation of packages has been evolving and it's come along various ways. And one issue that has come up in a few cases but never been decided and that this case presents is the issue about when assuming there's reasonable suspicion to seize someone's package, Mr. Lozano's case is one of those ones where the package was further along than almost any other package except perhaps the Shapiro case, is about to be delivered. A package is about to be delivered and suddenly it's taken and sent back in the other direction should not the person who would be receiving the package some notice be given to that person. It is indicated that concept of reasonable suspicion is supposed to be a brief detention and when you're going to Well it was pretty brief here wasn't it? Well no your honor, it was, depending on how one looks at it, the package didn't get delivered until four days later and it was basically 24 hours from the interception of the package until probable cause was developed. That was because the package had to be sent away wasn't it? Yes, but that would be a good reason to provide notice to the person because reasonable suspicion starts from the concept that the person is still innocent and you don't have probable cause yet. Well that's interesting about the providing notice, the package wasn't addressed to Mr. Lozano. The notice should have been put in the box though your honor where it was sent to. Yeah, but we're talking about standing here. How does someone whose name is not on the package have standing to assert these rights? And then later on, as I understand it, Mr. Lozano denied that the package was meant for him in any event. Your honor, we never fully explored the standing issue because the government only brought it up after the evidentiary hearing and when we were having oral argument and then the government expressly waived the standing issue. So if the court has concerns about standing, I believe they've either been waived or in all fairness, Mr. Lozano should be entitled to establish standing. I'm having a little trouble. They suspect the package, they send it to Anchorage to be tested. Now your position is that it wasn't addressed to your client, but it was addressed to a box that your client had? Yes. And your position is that they should have put a little note in the box saying, sorry, we've sent your package back to Anchorage to be tested for possible drugs? Or some form of notice. What is that? What is our authority that says they had to do that? The place indicates that when a person's possessions are being seized on a temporary seizure, one consideration and reasonableness is are you providing them notice that the seizure has occurred and what can be expected to happen in the seizure? But he hasn't, it's not addressed to him and he hasn't taken possession of it yet? He has not, but one person should have an expectation of the package. He had the reasonable expectation of that package being delivered that afternoon. The government and the magistrate tried to say it was going to be delivered the next day, but the testimony of Investigator Martinez was he couldn't say with absolute certainty, but in every likelihood that package would have been placed in Mr. Lozano's box the day it got to Barrow. Even though it was addressed to Mr. Bill Corner? Yes. The package was going to be placed in the box that day. It wasn't sent just to a box, it was sent to a Bill Corner at this box? Yes. And Mr. Lozano picked up the slip when it was ultimately delivered and there's no reason to think he wouldn't have picked up the slip or seen what was in it? Well, that's the whole point. That's why your client wound up. Right, but if one gives notice and it turns out that reasonable suspicion doesn't prove fruitful, then the purpose has been satisfied. You can't just simply assume that reasonable suspicion will lead to probable cause, so therefore we shouldn't provide the notice because reasonable suspicion starts with the assumption the person is still innocent and that's why the person who's going to be receiving the package or whose package is being detained. I mean, this is one of the conundrums in these kinds of cases and as I indicated, the law tends to be that a fictitious person has this fictitious person's standing that Mr. Lozano would have in this case, but we never really explored that because the government waived the issue. So in all fairness, if we're going to get off on standing, the court needs to either say that the government waived that objection or Mr. Lozano should be entitled to a hearing. No, I wasn't concerned about standing. But it does raise a question. You say this failure to give notice is just one of the factors in reasonableness and you start saying, okay, who exactly would they give notice to? I'm not raising a question about standing as to your entitlement to raise the issue. I'm raising an issue as to, well, how reasonable or unreasonable is it to expect notice in the context of a name that doesn't match the box? That, too, may be a factor to weigh. Perhaps, Your Honor, but I think the reasonable notice would be to put the notice in the location where the package was going to go to. I don't think that would oppose to it. I guess what case do you rely on? United States v. Place talks about the notice requirement in the context of a seizure. And the only case with a package that discussed it, I believe, was the Illinois decision in Shapiro, which said, but we don't have to use that to reach this decision because we find it otherwise unreasonable. And the court doesn't necessarily have to go there in this case because it's our position the seizure was otherwise unreasonable because the package was taken and sent all the way back to Anchorage. This is a longer delay than in the Hernandez case where the court said six or seven hours between the time of reasonable suspicion and probable cause was enough. Don't we have cases that make allowances for the distance in Alaska? The Aldez case talks about that, but the Aldez case was a sender case, and in that case there was no indication that there was any delay in the package in the Aldez case. And the sender and recipient cases are dealt with somewhat differently. And one of the things that I point out or argue in my brief is that there's a certain tension, if not an inconsistency, between what's called a seizure in these mail cases and what the court said was a seizure in the Jacobson case, the United States Supreme Court, which was a package case that said basically asserting dominion and control over that package was a seizure. So it's our position that basically when the government diverts the package at all from its just normal flow to do something with it that's not sending it through the mail, that constitutes a seizure under Jacobson requiring reasonable suspicion. And at that point, or certainly if the seizure is going to result in a delay of delivery, you have to provide notice to the person. And in this case, we have the seizure and the delay of delivery. I believe the North Dakota Supreme Court opinion in Ressler is consistent with Jacobson in saying that when you have a seizure and you're actually not just looking at the package where it's at, but picking it up and taking it somewhere else, in this case sending it all the way back to Anchorage, that requires more than reasonable suspicion and probable cause would be the requirement. To briefly discuss the 404B and 403 issues in this case, this presenting, as the court sees, the evidence against Mr. Lozano was entirely circumstantial. They didn't even find him to be with the box. In the end, it was found in a dumpster. So the government's case was very weak as far as the elements of the knowledge and intent. So they wanted to use these photographs and these things they found at a probation search of his son to show that Mr. Lozano knew about marijuana. He must have known about this. Here's a picture of him at some point in time in the past, several years to many, many years back, standing in marijuana fields. And we found some marijuana at his house, which may well have been personal use. And this is grossly inconsistent with this Court's decisions about that regard. And it was an abuse of discretion for the trial court, Judge Beisling, to allow this in. Thank you, Your Honor. I'd like to reserve the rest of my time. You have about a minute left. Thank you. Good morning, Your Honors. Craig Warner for the United States. May it please the Court. I'd like to address two substantial red herrings before anything else that were brought up in the appellant's argument. First of all, four or five days was mentioned. That is a red herring. The relevant time period is the time between the initial detention of the package, pursuant to reasonable suspicion, and the time probable cause is established, as compared to the time between initial detention and the time the package would have been delivered absent detention. In other words, before probable cause was established, how late was the delivery? And this was set out fairly clearly by the district court. The answer, according to the district court, was four hours in this case. At a maximum, it's 22 hours. In fact, if Your Honors review the appellant's reply brief, Your Honors will see that the mention of four to five days was backed away from by the appellant. That's because there's no authority for a suggestion that four to five days is at all relevant here. So the relevant time period is between four and 22 hours. Secondly, this notice argument is a red herring. There is no authority for this notice argument. The package was not addressed to the defendant. Why did the government waive standing? It seems to me since the package wasn't addressed to the defendant, that's a winning argument right there. That's a reasonable question, Your Honor. I don't know what the considerations were at the trial level that led to a waiver of standing. We're not bound by any of that. It was his box in any of that, wasn't it? It was certainly his box, yes, though it was not addressed to him. And he denied that it was his. That is correct.  Well, you know, I do think that the government is bound by its representations, Your Honor. But we are not. Of course not. Even there, the government is not relying on the standing argument. However, it is of great significance that the package was not addressed to the appellant. I'd like to briefly address U.S. v. Place because the appellant continues to cite it. Place is completely in a positive situation. Place is a case involving the right to travel. And it is a far stretch to suggest that there is any symbiosis between Place and the situation here. Place was luggage. That's correct, Your Honor. And the court's logic in Place is explicitly based on the fact that seizure of an item of carry-on luggage necessarily restricts the movement of a citizen using air transport in this country. That's just not the case when you're waiting for a piece of mail. It's a completely distinct situation. And the appellant's reliance on it to try to establish this idea that does not exist anywhere in the case law, that notice is required in this situation, I think reveals the lack of foundation for that argument generally. The proposed rule regarding notice is not found in any number of cases. Gill, Hernandez, England, and, of course, Aldez. It's not found in any number of cases involving extremely similar situations here. The reason, of course, is that the rule would be absurd. If the government had to place a notice that a package was being evaluated for drugs every time that it was intercepted. I think we understand that. Thank you, Your Honor. Jacobson is also off point. I won't belabor that. If I do one other thing, Your Honors, I'd like to emphasize,  in respect to the detention of the package, I'd like to invite the Court's attention to U.S. v. Aldez. Because it is the case that most strongly resembles our situation here. It is a case involving an almost exactly similar fact pattern here in Alaska, in which this Court, the Ninth Circuit, recognized the realities of mail delivery in rural Alaska and the impact of those realities on this situation. And I think it's very notable in the excerpt of record, page 10, that Judge Beislein of the District Court, he didn't explicitly refer to Aldez by name, but he certainly referred to the logic, his words in reaching his conclusion about the reasonableness of the detention of the package and its timing were as follows. The timing employed under the circumstances and conditions existing was appropriate. That's a pretty old case, though. Twenty years old. Have things improved any? Well, Your Honor, not really. We're dealing with a community with no roads in or out. And I don't mean to belabor the point. But air traffic is the only way in or out. In this case, there were no working dogs. This is Barrow, right up on the slope? That's correct, Your Honor. It's a town of 4,683 people as of the 2000 census. About 900 families. People know each other. There were two individuals, two post office employees, who reviewed that package. Neither of them had ever heard of a bill corner. It was pretty clear what was going on. And the only way to evaluate it was to send that package to Anchorage. The working dog was in Anchorage for training, and sending the dog to Barrow would have involved sedating it. It would have delayed the delivery of the package even further. I think unless the Court has questions regarding the detention of the package, I can move on briefly to the 404B issue. Okay. With respect to 404B, I'd like simply to note that the abuse of discretion standard is exacting. There was clearly not abuse of discretion here. Huddleston v. U.S., if the jury can reasonably conclude that the act occurred and the defendant was the actor, then the evidence is admissible. And in order for an abuse of discretion to occur, the decision by the district court has to be illogical or implausible. That's clearly not the case here. The events were not remote in time, only seven months prior, and that the appellant was living in a home in which there was substantial evidence of marijuana trafficking created a legitimate inference that his motive was to distribute. Certainly the photographs establish that as well. Unless the Court has questions. Are the photographs in question the ones that are part of the appellant's motion to file additional photographic evidence? I'm not recalling the answer to that question, Your Honor, and where those are located. We got a motion a few days ago, I guess, and it had a number of photographs and they seemed to match the description, so that's why I'm wondering if maybe Mr. John will be able to tell us. I'm going to have to defer on that point. Unless the Court has further questions about any issue, I can be finished. Thank you, Your Honor. Thank you. May it please the Court, to answer Judge Clifton's questions first, those are indeed the photographs they had gone back to the government after the trial, and I had not gotten a copy of them, so I was able to get them back. But these are all in the record, are they not? Yeah, I moved to get them into the record, because the way it works here is the exhibits get given back to the party at the end of the trial that presented them, so that whatever exhibits the government admitted at trial went back to the government, and I requested that they give me a copy. Some are marked with exhibit numbers and some are not, but are you saying that all of this, which was part of your motion, all of this material is in the record? Yes, that's what the jury saw, Your Honor, when they were looking at those exhibits. As to the question here of what conditions have changed and the like, the Aldez case is an old case, and in this case the package was about to be delivered, and we can talk about notice and what it would do or wouldn't do, but if an innocent person gets notice, then they know what's up, and notice in some cases may hurt the government, but they still get the evidence even if it isn't as easy to convict the person, and notice is really required when all you have is reasonable suspicion. Any other questions from the court? And your best authority on that is place? It's place and Shapiro from the Illinois Supreme Court, Your Honor. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton